[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14074
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2011
JOHN LEY
CLERK

Agency No. A073-604-316


FOYSAL AHAMED,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 22, 2011)

Before TJOFLAT, CARNES and FAY, Circuit Judges.

PER CURIAM:

Foysal Ahamed, a native and citizen of Bangladesh, petitions for review of the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") final order of removal and denying his claims for asylum, withholding of removal, and CAT relief. Ahamed argues that the BIA erred in finding that he had not shown past persecution based on his political opinion. He also contends that he established a well-founded fear of future persecution. For the reasons stated below, we deny the petition for review.

I.

The Department of Homeland Security issued a Notice to Appear to Ahamed, charging that he was a native and citizen of Bangladesh who entered the United States without being admitted or paroled by an immigration officer. Ahamed admitted the allegations in the notice to appear and conceded removability. He filed an application for asylum, withholding of removal, and CAT relief.

Ahamed's application was based on the following facts. In 1974, Ahamed joined the Islamic Student Association, a group affiliated with the Jamat Islam political party. Ahamed served as treasurer of the Student Association and collected donations to Jamat Islam from wealthy people in the area. The party promised to use the donations to build houses and provide aid for the needy. After

a time, however, the party stopped following through on its promises. When the donors realized this, they became angry, and they threatened Ahamed and other party members who had collected money from them. Ahamed tried to return some of the donations, but he was unable to repay all of the money by himself.

Ahamed became disillusioned with Jamat Islam on account of the party's failure to abide by its promises, so he decided to resign from the party. When the party leaders learned that he was resigning, they were angry because he knew everything about the party's internal affairs. They wanted to either kill Ahamed or force him to remain in the party. In 1984, Ahamed was kidnapped by a group of terrorists who took him to a building at Dakar University. His kidnappers chained him up and did not give him any food. They threatened to kill Ahamed if he did not "give [them] the money back." The kidnappers blindfolded Ahamed and hit him with fists, bats, and hockey sticks. They also applied heavy weight to Ahamed's chest until he had blood in his mouth. When the kidnappers saw that Ahamed was getting sick, they feared that he would die, so they released him. Ahamed received medical treatment from the village physician. Ahamed reported the kidnapping to the police, but they would not take his case "[b]ecause at that time, some other party was in power."

In addition to the kidnapping incident, Ahamed was attacked on the street

two or three times between 1984 and 1994 and was beaten with sticks. After each of these attacks, Ahamed received medical treatment from the village doctor. Ahamed testified that he knew one of the attackers, but he did not otherwise describe their identities or motivations.

Ahamed left Bangladesh and came to the United States in 1994. He was not able to bring his wife and children with him at the time. One year after Ahamed left Bangladesh, party members and the people from whom he had collected money went to the house where his wife and children were staying and "took everything." In addition, Ahamed's mother received threats from "influential people" and party members who demanded that their money be returned. In 1995, Ahamed's wife and children came to the United States. Ahamed testified that he could not return to Bangladesh because there was no security in that country and because the individuals from whom he had collected money were still searching for him. Those individuals had ties to terrorism and could "kill for anything."

The IJ denied Ahamed's application for asylum, withholding of removal, and CAT relief. First, the IJ determined that Ahamed's testimony was not credible. The IJ also concluded that Ahamed had failed to show past persecution. The IJ reasoned that the incident where Ahamed was detained for two days was not so severe as to constitute persecution. The IJ further explained that Ahamed

had not linked the mistreatment that he experienced to one of the protected grounds for asylum. The IJ observed that the incidents described by Ahamed were more akin to criminal acts or personal vendettas than to political persecution. Accordingly, the IJ denied Ahamed's application for asylum. Given Ahamed's inability to meet the standard for asylum, the IJ determined that he could not meet the higher standard for withholding of removal. Finally, the IJ denied Ahamed's claim for CAT relief because Ahamed had not established a clear probability that he would be tortured by, or with the acquiescence of, the Bangladeshi government.

Ahamed appealed to the BIA, but the BIA dismissed his appeal. The BIA concluded that it was unnecessary to address the IJ's adverse credibility finding because, even assuming that Ahamed's testimony was credible, he had not shown past persecution or a well-founded fear of future persecution. Regarding past persecution, the BIA determined that Ahamed had failed to show a nexus between the mistreatment that he suffered and one of the protected grounds for asylum. The BIA pointed out that the party's donors targeted Ahamed not because of his political beliefs, but because they wanted their money returned. In addition, the BIA noted that there was no evidence that the Jamat Islam party wished to harm Ahamed because of his political opinion. The BIA further concluded that the incident where Ahamed was kidnapped for two days, and the street attacks that he

5

suffered, were not so extreme as to constitute persecution. The BIA observed that these were "relatively isolated incidents, occurring over a 10 year period."

The BIA also determined that Ahamed had not established a well-founded fear of future persecution. The BIA reasoned that Ahamed's ties to Jamat Islam were not so significant or well-known that he would be targeted by party members or by angry donors after the passage of more than 25 years. Given that Ahamed had not met the standard for asylum, the BIA concluded that he likewise was unable to meet the higher standard for withholding of removal. Finally, the BIA upheld the IJ's denial of CAT relief.

## II.

In an immigration case, we review the BIA's decision, and any portions of the IJ's opinion adopted by the BIA. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA issued its own decision, so we review that decision. Because the BIA did not adopt the IJ's adverse credibility finding, we need not consider Ahamed's argument that the credibility finding is not supported by the record.

We review the BIA's factual findings to determine whether they are supported by substantial evidence. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). "[W]e view the record evidence in the light most

favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1027. We may reverse the BIA's factual findings only when the record compels a reversal. *Id.*

An applicant for asylum must demonstrate that he is a refugee. INA § 208(b)(1), 8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a). An applicant qualifies as a refugee if he suffered past persecution, or has a well-founded fear of future persecution, in his country of origin. 8 C.F.R. § 208.13(b); *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009). To establish past persecution, the applicant must show that he was persecuted in the past on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.13(b)(1); *Kazemzadeh*, 577 F.3d at 1351.

We need not decide the question of whether or not Ahamed has established past persecution because the record provides ample evidence supporting the BIA's finding the Ahamed simply failed to show a nexus between the mistreatment he says he experienced and a protected ground under the statute.

While soliciting political contributions from donors, Ahamed made promises to them about how the money would be put to use. When these promises did not materialize, the donors demanded their money back. And when Ahamed could not come up with all of their money, they kidnapped and restrained him for

7

two days, beating him and threatening to kill him if he did not give them their money back. The violence done to Ahamed was not a result of his political opinion (or any other statutorily protected ground); it resulted from angry donors violently reacting to his failure to give them back their money after the promises he made were broken. Consequently, Ahamed is not entitled to relief. .

In the absence of past persecution, an applicant may establish a well-founded fear of persecution by showing that there is a reasonable possibility that he will be persecuted if he is returned to his country of origin. 8 C.F.R. 208.13(b)(2); *Kazemzadeh*, 577 F.3d at 1352. The applicant must show that his fear of persecution is "subjectively genuine and objectively reasonable." *Al Najjar,* 257 F.3d at 1289. An applicant can satisfy the objective prong by showing that he "has a good reason to fear future persecution." *Id.* (quotation omitted).

To qualify for withholding of removal, an applicant must establish that her life or freedom would be threatened in her country of origin on account of a statutorily protected ground. *See* INA § 241(b)(3)(A); 8 U.S.C. § 1231(b)(3)(A). This Ahamed has failed to do.

Ahamed's failure to meet the standard for asylum means that he cannot satisfy the higher standard for withholding of removal. *See Sepulveda*, 401 F.3d at 1232-33. Finally, Ahamed does not challenge the BIA's denial of his claim for

8

CAT relief in his initial brief. Therefore, he has abandoned any argument with respect to that issue. *See id.* at 1228 n.2 (noting that issues not raised in a party's initial brief are deemed abandoned). Accordingly, after review of the administrative record and the parties' briefs, we deny the petition for review.

**PETITION DENIED.**